Allen GINSBERG, Louis Ginsberg, Young Entertainers, Inc., a Florida corporation, and Harry Richman, Plaintiffs,

v.

The CITY OF MIAMI, a municipal corporation, Melvin Reese, as City Manager, Paul Andrews, as Assistant City Manager, and Manny Costa, as an Employee of the City of Miami, Defendants.

No. 69-1527-Civ-CA.

United States District Court
S. D. Florida,
Miami Division.

Dec. 31, 1969.

Tobias Simon, Miami, Fla., for plaintiff Ginsberg.

Martin Blitstein, Miami, Fla., for plaintiff Young Entertainers, Inc.

Alan H. Rothstein, City Atty., and Charles K. Allan, Asst. City Atty., for defendants.

## MANDATORY INJUNCTION

ATKINS, District Judge.

There are a few areas of the law in which recent court decisions have been unfavorably received by the public. One of these areas involves the constant conflict between the right of free speech and the right of public authority to restrict such speech in the interest of public welfare. The present case involves such conflict. On the evening of December 22, 1969 the City of Miami, acting through its employees, including Manny Costa, manager of the Miami Marine Stadium, a municipal facility, and Paul Andrews, Assistant City Manager, interrupted a poetry reading being given at the stadium by Allen Ginsberg. Young Entertainers, Inc., one of the plaintiffs in this case had leased the stadium and engaged Ginsberg for the performance which he was unable to complete. According to the testimony of Costa, who was present throughout the performance, the interruption was based on his feeling that Ginsberg's poetry was obscene and should not be allowed to continue, especially as there were apparently young teenagers in attendance. While Costa's actions may have been taken with the best of motives, they were clearly legally impermissible. Freedom of expression is a sacred constitutional right which the highest court in the land has constantly protected. Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). Speech may not be restrained in advance except when there is clear and unmistakable determination that the speaker will violate the law in the course of his speech. Brooks v. Auburn University, et al., 412 F.2d 1171 (5th Cir. 1969). Costa's action in restraining the remainder of Ginsberg's poetry reading was based on a determination which fell far short of the procedures required by Carroll, 393 U.S. at 183, 89 S.Ct. 347 and A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809. It is true that obscenity is not entitled to the protection of the First Amendment but the fact of obscenity must be determined by proper judicial authority at an adversary hearing. Parenthetically, after a review of a tape recording of the performance which was in substantial conformity with the published poetry that Ginsberg was reading from, I do not find it obscene within the constitutional standards laid down by the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and so ably elaborated upon by Mr. Justice Brennan in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1. He stated that three elements must coalesce before a work can be deemed obscene

"(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

Having determined that the actions of the City of Miami, through its employees, violated the First Amendment rights of the plaintiffs in this cause [1] the question now becomes what remedy shall the court afford? The plaintiffs seek several items but principally desire an injunction which would require the city to reschedule the poetry reading at the Marine Stadium for the evening of January 3, 1970 at no further cost to the plaintiffs. NAACP v. Thompson, 357 F.2d 831 (5th Cir. 1966) which approved the issuance of a mandatory injunction requiring state officials to authorize the plaintiff corporation to do business in the state is cited as authority for such action. I do not read *Thompson* as authority for the relief which plaintiffs seek. In fact I find no cases in which a federal court in protection of First Amendment freedoms has seen fit to take part in the actual scheduling of a performance for a specific time. The courts have often restrained the cancellation of a performance which had been scheduled by the parties involved but this is distinguishable. *Brooks, supra*; Holbrook v. The City of Fort Lauderdale, et al., Civil Action No. 67–186–Civ–CA, U. S. District Court, Southern District of Florida. Alternative relief, such as the money damages the promoters may suffer due to ticket refund claims is easily granted but fails to restore the illegally terminated right of free speech. Anything less would allow the city's action in suppressing Ginsberg's poetry to succeed. I feel the only adequate remedy is to allow Ginsberg to finish his poetry reading. I accordingly order as follows:

 The City of Miami shall make available to Allen Ginsberg and Young Entertainers, Inc., the Miami Marine Stadium or some suitable alternative location, without cost, at some reasonable evening hour January 2 or 3, 1970. At this time Ginsberg may resume his poetry reading at the beginning of the poem "Kral Majales" which he was reading when his microphone was disconnected. As the resumption of this performance is for the benefit of Ginsberg and those who attended the interrupted reading no additional tickets may be sold. Whether attendance shall be limited to ticket holders is a matter for the parties to determine. The Court is not limiting attendance but simply negating the possibility of financial gain arising from the ample publicity surrounding this lawsuit.

At the time of the performance, Louis Ginsberg may join his son on the stage if he so desires. All other relief sought by the plaintiffs in this cause will be ruled upon at a future date.

---

[1]. Allen Ginsberg; Young Entertainers, Inc.; Louis Ginsberg, father of Allen Ginsberg who was not allowed to join his son on the stage and speak; and Harvey Richman, a member of the audience who represents that class.